**\*NOT FOR PUBLICATION\***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____

**SIREEN SAWALHA HASHEM**,    :
    :
Plaintiff,    :
    :   Civ. Action No.: 15-8585 (FLW)(DEA)
v.    :
    :         **OPINION**
**HUNTERDON COUNTY;**    :
**HUNTERDON CENTRAL**    :
**REGIONAL BOARD OF**    :
**EDUCATION; HUNTERDON**    :
**CENTRAL REGIONAL HIGH**    :
**SCHOOL; CHRISTINA**    :
**STEFFNER; SUZANNE COOLEY;**    :
**ROBERT ZYWICKI; and**    :
**REBECCA LUCAS**,    :
    :
Defendants.    :
_____:

**<u>WOLFSON, United States District Judge</u>**

      Plaintiff Sireen Sawalha Hashem ("Plaintiff" or "Hashem"), an Arab Muslim woman of Palestinian descent, who filed the instant Complaint on December 14, 2015, and as amended on December 23, 2015, alleges that her former employers, Hunterdon Central Regional High School (the "High School") and Hunterdon Central Regional High School Board of Education (the "Board"), as well as her former supervisors, Christina Steffner, Suzanne Cooley, Robert Zywicki and Rebecca Lucas (the "Individual Defendants")

1

(collectively, "Defendants"),[1] inter alia, discriminated and retaliated against Hashem on the basis of her race, religion and national origin, pursuant to state and federal statutes. Defendants move to dismiss Plaintiff's Amended Complaint on various grounds, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff opposes the motion and cross-moves for leave to file a Second Amended Complaint.

For the reasons set forth below, Defendants' motion is granted in part and denied in part as follows: (i) Hashem's claims against the Individual Defendants under Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e, et seq. ("Title VII") are dismissed; (ii) all of Hashem's claims against Zywicki are dismissed as time-barred; (iii) Hashem's disparate impact claim under Title VII and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-3, et seq. ("NJLAD") in Count Three is dismissed without prejudice; (iv) Hashem's NJLAD conspiracy to discriminate claim in Count Five is dismissed; (v) Hashem's First Amendment claims in Counts Six and Seven and her Fourteenth Amendment Equal Protection claim in Count Eight are dismissed without prejudice; (vi) Hashem's defamation claim in Count Ten[2] is dismissed as to all Defendants.  Defendants' motion to dismiss is denied as to the following counts: (i) Count One against the Board under Title VII and NJLAD, as well as the Individual Defendants under NJLAD, for employment discrimination; (ii) Count Two against the Board under Title VII and NJLAD, as well as the Individual Defendants under NJLAD, for disparate treatment; (iii) Count

---

[1] The High School is a named defendant, but it is not a moving party in the instant action. In addition, Hunterdon County has been voluntarily dismissed by Hashem.

[2] I note, however, that Hashem has labeled both her discriminatory discharge claim and her defamation claim as Count Nine.  As such, I shall refer to her discriminatory discharge claim as Count Nine and her defamation claim as Count Ten.

Four against the Board under Title VII and NJLAD, as well as the Individual Defendants under NJLAD, for retaliation; (iv) Count Nine against the Board under Title VII and NJLAD, as well as the Individual Defendants under NJLAD, for discriminatory discharge. Finally, Hashem is given leave to amend her Amended Complaint consistent with the dictates of this Opinion, and therefore, Hashem's cross-motion for leave to file her Second Amended Complaint is denied as moot.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On a motion to dismiss, I must accept Hashem's allegations as true.  In her Amended Complaint, Hashem alleges that she was hired as a student teacher at the High School in January 2013.  Am. Compl. at ¶ 16.  Shortly thereafter, Hashem was offered a full-time position as a U.S. History teacher in the Social Studies Department, which she accepted.[3]  Id. at ¶ 17. Almost immediately after becoming a full-time teacher, Hashem alleges that she experienced discrimination.

In October 2013, as part of her training, Hashem alleges that she observed the class of a fellow Social Studies teacher, Ms. Lindsay Warren, who is a Caucasian female.[4]  Id. at ¶ 18.  During that class, Ms. Warren showed her students a video featuring Malala

---

[3] While not expressly alleged in the Amended Complaint, it appears that Hashem entered into a written employment agreement with Defendants for the 2013-2014 school year, which was renewed for the 2014-2015 school year.  Because her employment contract was not renewed for the 2015-2016 school year, Hashem's employment ended on June 30, 2015.  Id. at ¶ 36.

[4] Later in the Amended Complaint, Hashem refers to Lindsay Warren as Lindsay Wagner. See id. at ¶ 28.  Because it appears that Hashem is referring to the same person, and for the sake of clarity, I will refer to this teacher as Lindsay Warren ("Ms. Warren").

Yousafzai (the "Video").[5]  Id. at ¶¶ 18-19.  Following that class, Ms. Warren suggested that Hashem also incorporate the Video into her U.S. History class; later that day, Hashem showed the Video to her students.   Id.  Soon after, Zywicki, a supervisor in the Social Studies Department, informed Hashem that a parent complained to Cooley, the principal of the High School, regarding the presentation of the Video.  Id. at ¶ 20.  In response to the parent's complaint, Zywicki allegedly instructed Hashem that "she could not teach current events in the same manner as her non-Arab, non-Palestinian and non-Muslim colleagues." Id.

Hashem alleges that, in March 2013, she was invited to participate in an elective class taught by another teacher.  Id. at ¶ 21.  At that class, Hashem acted as a translator for a Skype conversation between the students and Mr. Bashir Khairi, a Palestinian man whose experiences were recounted in the novel, "The Lemon Tree: An Arab, a Jew, and the Heart of the Middle East."  Id. Shortly thereafter, Hashem was informed that the school received a complaint from a parent of a student "about the use of the book [the] Lemon Tree in the curriculum and about Plaintiff's participation in the class."  Id. at ¶ 22.  Hashem does not allege, however, that Defendants made any discriminatory comments in connection with that parent complaint.  In a separate incident, in May 2014, Hashem alleges that she was subjected to another discriminatory comment from Cooley, the principal at the High School.  Id. at ¶¶ 23-24.  Specifically, Cooley received another complaint from a parent after Hashem asked her students to compare the actions of John Brown at Harpers Ferry to

---

[5] Malala Yousafzai survived being shot by a Taliban gunman, and she was awarded the Nobel Peace Prize for her advocacy for girls' rights to an education.  See id. at ¶ 18.

4

the actions of Osama Bin Laden.[6]  Id.  After receiving the complaint, Cooley allegedly directed Hashem "not [to] mention Islam or the Middle East in her class" and stated that she "should not bring her culture, life experience or background into the classroom."  Id. at ¶ 24.

In September 2014, one of Hashem's students posted a comment on Facebook, which allegedly stated that Hashem's brother was a terrorist, and that Hashem is "anti-Israel, was attempting to instill anti-Semitic views in students and warned that Plaintiff may hurt students who did not agree with her."  Id. at ¶ 25.  A day after the comment was posted, Cooley summoned Hashem to her office, and when she arrived, Cooley and Steffner, the Superintendent of the High School, allegedly "confronted Plaintiff and accused her of not sticking to the curriculum, questioned her about her teaching and how it related to the common core.... [And, they] accused her of discriminating against Jewish students and questioned her about her place of birth, her family, as well as her personal life."  Id. at ¶¶ 26-27.  Several days after that incident, on September 11, 2014, Steffner allegedly told Hashem that she had "caused trouble because she was Palestinian since the day she started working at the high school," specifically referencing Hashem's decision to show the Video to her students.  Id. at ¶ 28.  In an attempt to defend her actions, Hashem responded to Steffner that Ms. Warren had also shown the same video; Steffner then allegedly slammed her hand on the table and stated, "You are not Lindsay."  Id.

Several months later, in April 2015, Lucas, who was one of Hashem's supervisors in the Social Studies department, emailed Hashem that she was required to attend a meeting

---

[6] In an effort to incite an armed slave revolt, John Brown, a white abolitionist, launched a raid on the United States arsenal located at Harpers Ferry, West Virginia in 1859.

at which Lucas would evaluate Hashem's performance as a teacher.  See id. at ¶ 30.  In that email, Lucas also verbally informed Hashem that she had the right to be represented by the teachers' union.  Id.  Later that same day, Lucas told Hashem that she was "being let go" because Steffner and Cooley "wanted her gone."  Id. at ¶ 31.  At the meeting, Lucas provided Hashem with a "poor evaluation" and informed Hashem that her employment contract would not be renewed for the 2015-2016 school year.  Id. at ¶ 32.  On April 21, 2015, Hashem received written notice from Steffner that her contract would not be renewed.  Id. at ¶ 33.  After Hashem asked for written reasons for the decision, on May 18, 2015, Steffner provided Hashem with a second written notice, "stating the reasons for her non-renewal and advising her of her right to appear before [the Board] for a review of the decision."  Id. at ¶ 34.

Hashem exercised that right to appear before the Board and requested the Board overturn the school's decision not to renew her contract.  Id. at ¶ 35.  At a hearing on June 15, 2015, approximately sixty students and parents supporting Hashem appeared, but were denied entry to the meeting by the Board attorney.  Furthermore, Hashem was permitted "only 30 minutes to present her case."  Id.  Because the Board restricted access to the meeting, Hashem alleges that only "[a]pproximately five individuals were permitted to enter, one at a time, to speak in support of" her continued employment at the High School.  Id.  Two days after the meeting, Steffner provided Hashem with written notice of the Board's decision, which concluded that "the Board did not vote to overrule the recommendation that [Hashem's] employment contract be non-renewed for the 2015-2015 school year."  Id. at ¶ 36.  As such, Hashem's employment ended on June 30, 2015.  Id.

Shortly thereafter, two Federal Bureau of Investigation ("FBI") agents visited Hashem at her house on July 16, 2015, claiming that the FBI had received information that Hashem, while appearing before the Board, had made a terroristic threat. Id. at ¶ 37. According to the FBI agents, Hashem had allegedly told the Board that "they will be sorry if she is fired." Id. While Hashem vehemently denies making the statement, she alleges that one of the members of the Board must have contacted the FBI, since the Board "was in executive session and the only people present when the Plaintiff spoke were the Plaintiff and the Board members." Id.

Hashem filed a charge with the Equal Employment Opportunity Commission ("EEOC") on May 31, 2015, alleging that the High School had discriminated against her based upon race and religion. Id. at ¶ 4. On August 28, 2015, Hashem "filed an Amended Complaint with the EEOC adding the additional defendants and Title VII causes of action." Id. Hashem received a Right-to-Sue letter from the EEOC on November 9, 2015. Hashem then filed the instant Complaint on December 14, 2015, which she amended on December 23, 2015. Id. at ¶ 5.

In her Amended Complaint, Hashem asserts the following claims: Count One - discrimination based on race, religion and national origin in violation of Title VII and NJLAD, id. at ¶¶ 38-40; Count Two - disparate treatment in violation of Title VII and NJLAD, id. at ¶¶ 41-44; Count Three - disparate impact in violation of Title VII and NJLAD, id. at ¶¶ 45-48; Count Four - retaliation in violation of Title VII and NJLAD, id. at ¶¶ 49-51; Count Five - conspiracy to discriminate in violation of NJLAD, N.J.S.A. § 10:5-15, id. at ¶¶ 52-54; Count Six - violation of the First Amendment and the New Jersey Constitution because Defendants "individually and collectively acted with wanton and

reckless disregard for plaintiff's civil rights," id. at ¶¶ 55-57; Count Seven - violation of the First Amendment and the New Jersey Constitution, since Defendants retaliated against Hashem "for having spoken out on matters of public concern," thereby "abridge[ing] plaintiff's rights [of] freedom of speech," id. at ¶¶ 58-60; Count Eight - violation of the Fourteenth Amendment and the New Jersey Constitution, id. at ¶¶ 61-64; Count Nine - discriminatory discharge in violation of Title VII and NJLAD, id. at ¶¶ 65-67; and Count Ten - defamation, pursuant to N.J.S.A. 59:1-1, et seq., id. at ¶¶ 68-71.

Defendants now move to dismiss Hashem's Amended Complaint pursuant to Rule 12(b)(6).  In response, Hashem opposes the motion and has filed a cross-motion for leave to file a Second Amended Complaint.  In her opposition brief, Hashem references numerous exhibits, including third-party affidavits that were not attached to the Amended Complaint.  On July 25, 2016, the Court ordered Hashem to show cause why the exhibits attached to her opposition brief may properly be considered on a motion to dismiss. Hashem responded to his Court's Order to Show Cause on August 1, 2016.  In a comprehensive Order, filed on August 1, 2016, the Court concluded that the following Exhibits may be considered on the present motion: Exhibit 1, Exhibit 3, Exhibit 4, and Exhibit 5.  However, the Court found that the remaining exhibits are extraneous to the pleadings and will not be considered on a motion to dismiss.

## III.    STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any

reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the… claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (citation and quotations omitted); Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (citation and quotations omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the

plaintiff must plead to state a claim." <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 787 (3d Cir. 2016) (quotations and brackets omitted).  Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> (quotations omitted).  Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> (quotations and brackets omitted).

## IV.    DISCUSSION

## A.    Individual Liability under Title VII

The Individual Defendants move to dismiss Hashem's Title VII claims, contending that there is no individual liability under Title VII.  Indeed, Title VII jurisprudence is clear that individual employees, including supervisors, are not subject to liability under Title VII.  <u>See</u> <u>Sheridan v. E.I. DuPont de Nemours & Co.</u>, 100 F.3d 1061, 1078 (3d Cir. 1996) ("Congress did not intend to hold individual employees liable under Title VII."); <u>see also</u> <u>Tai Van Le v. Univ. of Pa.</u>, 321 F.3d 403, 408-409 n.3 (3d Cir. 2003) (noting that, where the defendant was the plaintiff's supervisor and not his employer, "liability cannot exist pursuant to Title VII"); <u>Emerson v. Thiel College</u>, 296 F.3d 184, 190 (3d Cir. 2002) ("[I]ndividual employees are not liable under Title VII.").  It is irrelevant whether the Individual Defendants were acting in their official or individual capacities, since Hashem's claims may not be properly maintained against those Defendants.  Accordingly, Hashem's Title VII claims in Counts One through Four and Nine against the Individual Defendants are dismissed.[7]

---

[7] I note that, "[u]nlike its federal counterpart, the [NJLAD] does impose individual liability" under N.J.S.A. 10:5-12e.  <u>Ross-Tiggett v. Reed Smith LLP</u>, No. 15-8083, 2016 U.S. Dist. LEXIS 113554, at *19-20 (D.N.J. Aug. 24, 2016); <u>see</u> N.J.S.A. 10:5-12e

**B.     Statute of Limitations**

**(i).     Zywicki**

Zywicki argues that all claims against him should be dismissed as time-barred because Hashem alleges that Zywicki made one discriminatory statement on October 24, 2013, which falls outside: (1) the two-year statute of limitations period for NJLAD claims; (2) the two-year statute of limitations period for the Federal and State constitutional claims; (3) the 300-day statute of limitations period for Title VII claims; and (4) the one year statute of limitations period for defamation *per se* claims.   Hashem maintains, pursuant to the continuing violation theory, that the claims against Zywicki are not time barred because he, like all Defendants, engaged in a persistent and on-going pattern of discrimination with the last act of Defendants falling within the limitations periods.[8]

In the Third Circuit, a statute of limitations defense may be raised under Rule 12(b)(6), "but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Martin v. Ford Motor Co.,

---

(NJLAD makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so.").  In fact, Defendants concede this fact.  Thus, the claims under NJLAD against the Individual Defendants are not dismissed on this basis.

[8] Hashem does not dispute the aforementioned statute of limitation periods are applicable in this matter.  See Montells v. Haynes, 133 N.J. 282, 286 (1993) (stating that the statute of limitations for NJLAD claims is two years); Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991) (stating that the statute of limitations for Section 1983 claims is the same as "the state statute of limitations period applicable to personal injury torts," which is two years in New Jersey); Freeman v. State, 347 N.J. Super. 11, 20-22 (App. Div. 2002) (stating that the statute of limitations for New Jersey state constitutional claims is two years); Burgh v. Borough Council of the Borough of Montrose, 251 F.3d 465, 469-70 (3d Cir. 2001) (stating that a plaintiff must file an EEOC charge within 300 days after his or her claim of discrimination accrued under Title VII); Fioriglio v. City of Atlantic City, 963 F. Supp. 415, 425 (D.N.J. 1997) (stating that, in a defamation cause of action, "the New Jersey statute of limitations is one year.").

765 F. Supp. 2d 673, 686 (E.D. Pa. 2011) (internal quotation marks and citation omitted);

see Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002).  It must be "clear, from the

face of the complaint, that the claim is barred by the statute of limitations."  Martin, 765 F.

Supp. 2d at 686.

   Under the continuing violation doctrine, "when a defendant's conduct is part of a

continuing practice, an action is timely so long as the last act evidencing the continuing

practice falls within the limitations periods."  Cowell v. Palmer Twp., 263 F.3d 286, 292

(3d Cir. 2001) (internal quotation marks and citation omitted); see West v. Philadelphia

Electric Co., 45 F.3d 744, 754 (3d. Cir. 1995) (stating that a plaintiff must "demonstrate

that the act is part of an ongoing practice or pattern of discrimination of the defendant.").

To invoke the doctrine, the plaintiff must satisfy two basic requirements.  See West, 45

F.3d at 754.   First, the plaintiff must plead that at least one act occurred within the filing

period.  Id. at 754-755.  Second, the plaintiff must demonstrate that a defendant's actions

are "more than just the occurrence of isolated or sporadic acts of intentional

discrimination."  Id. at 755 (internal quotation marks and citation omitted).

   In her Amended Complaint, Hashem alleges that Zywicki made a discriminatory

comment on October 24, 2013, which is approximately two years and two months before

Hashem filed her Complaint.  Id. at ¶ 20.  Thus, Hashem does not allege that Zywicki made

any discriminatory comments or took any discriminatory action within any of the

applicable statute of limitations periods.[9]  See West, 45 F.3d at 754-755.  Next, contrary to

her position, Hashem must allege that Zywicki engaged in an ongoing pattern of

---

[9] In her proposed Second Amended Complaint, Hashem does not allege any additional
discriminatory conduct by Zywicki.

discrimination; she cannot rely on the discriminatory acts committed by other individuals. See West, 45 F.3d at 754; see also Keslosky v. Borough of Old Forge, 66 F. Supp. 3d 592, 617-618 (M.D. Pa. 2014) ("A continuing violation requires the repetition, or recurrence, of acts by the alleged offender."). Indeed, absent any additional acts, Zywicki's one comment cannot meet the requirements of the continuing violation doctrine because his conduct was not ongoing and persistent; rather, it is merely an isolated incident of alleged intentional discrimination. Therefore, Hashem's claims against Zywicki are not saved by the continuing violation doctrine, and as such, they are time-barred. Accordingly, Counts One through Five and Nine are dismissed as to Zywicki.

**(ii). <u>Claims against other Defendants under Title VII</u>**

Furthermore, Defendants also argue that Hashem's claims against the Board, Steffner, Cooley and Lucas for employment discrimination (Count One), disparate treatment (Count Two) and disparate impact (Count Three) are time-barred under the 300-day statute of limitations applicable to Title VII claims. Hashem responds that "Defendants' request for dismissal of Plaintiffs' [sic] well asserted claims with prejudice, is not only intended to harass Plaintiff for filing legitimate claims, but also wastes judicial resources." Pl.'s Br. at p. 34.

Under Title VII, a plaintiff must file an EEOC charge within 300 days after the date of the discriminatory act. See 42 U.S.C. 2000e-5(e); see also Burgh, 251 F.3d at 469-470. "Absent a continuing violation, all discriminatory acts that are alleged to have occurred more than 300 days prior to the EEOC filing are time-barred." See Verdin v. Weeks Marine, Inc., 124 Fed. App'x 92, 95 (3d Cir. 2005); see also Smith v. Amerada Hess Corp., No. 05-560, 2005 U.S. Dist. LEXIS 25822, at *9 (D.N.J. Oct. 31, 2005). Here, Hashem

filed her initial EEOC charge on May 31, 2015.  Thus, absent a continuing violation, all discriminatory acts that occurred before August 4, 2014, i.e. 300 days prior to May 31, 2015, are time-barred.

While the vast majority of the alleged discriminatory acts in the Amended Complaint occurred within the 300-day statute of limitations period, one alleged incident did not. [10]  Specifically, on May 9, 2014, after advising Hashem that a parent had complained about her comparative analysis exercise, Cooley instructed Hashem that "she should not mention Islam or the Middle East in her class," and that she "should not bring her culture, life experience or background into the classroom." Id. at ¶ 24.  Hashem seeks to invoke the continuing violation doctrine to toll the statute of limitations on this particular act.

In order to do so, Hashem must establish: (1) that Cooley made at least one discriminatory comment after August 4, 2014, and (2) that Cooley's actions are more than just the occurrence of isolated or sporadic acts of discrimination.  See West, 45 F.3d at 754-755.  To determine whether the violations are part of an ongoing pattern of discrimination, this Court must examine whether Cooley's acts constitute the same type of discrimination, and whether those acts are recurring.  See Cowell, 263 F.3d at 292; see also Cibula v. Fox, 570 Fed. App'x 129, 136-137 (3d Cir. 2014).

Here, Cooley made at least one comment after August 4, 2014.  Hashem alleges that, on September 9, 2014, Cooley summoned Hashem to her office through the school public announcement system.  Am. Compl. at ¶ 27.  When Hashem arrived at the office,

---

[10] To be clear, I have previously concluded that all claims against Zywicki are time-barred, and the continuing violation doctrine does not apply to those claims, so I need not address his alleged discriminatory comment that was made on October 24, 2013.

Cooley and Steffner accused Hashem "of discriminating against Jewish students and questioned her about her place of birth, her family, as well as her personal life." Id. In addition, it is reasonable to conclude that Cooley's alleged discriminatory comments in that regard were based on hostility towards Hashem's race, religion and national origin, and as such, the May 2014 comment and the September 2014 comments constitute the same type of discrimination. See Cowell, 263 F.3d at 292. Finally, Cooley's comments are recurring, since she allegedly made two discriminatory comments within a relatively short period of time. See id. In addition to those comments, Hashem alleges that Lucas told her that Cooley and Steffner "wanted her gone," allegedly based on her racial and religious background. Am. Compl. at ¶ 31. Therefore, at this juncture, accepting Hashem's allegations as true, the continuing violation doctrine applies.

Furthermore, the remaining alleged discriminatory acts all fall within the 300-day statute of limitations period under Title VII. See Verdin, 124 Fed. App'x at 95. On September 11, 2014, Steffner allegedly "told Plaintiff that she caused trouble because she was a Palestinian since the day she started working in the high school," making reference to the Video, and she told Hashem that she is "not Lindsay." Am. Compl. at ¶ 28. In addition, on August 31, 2015, Hashem amended her EEOC charge to include discriminatory acts that occurred after May 31, 2015. On June 15, 2015, Hashem alleges that the Board acted in a discriminatory manner when it restricted public access to the meeting, and it only permitted Hashem "30 minutes to present her case." Id. at ¶ 35. On June 17, 2015, Steffner sent written notice to Hashem, notifying her that "the Board did not vote to overrule the recommendation that your employment contract be non-renewed for the 2015-2016 school year," which Hashem alleges was motivated by discriminatory

animus.  Id. at ¶ 36.   Finally, Hashem alleges that at least one of the Defendants contacted the FBI and provided a false report of terroristic threats, resulting in two FBI agents showing up at Hashem's house on July 16, 2015, which she contends is further evidence of the Defendants' discriminatory intent.  Id. at ¶ 37.

Because Cooley's May 2014 comment is saved by the continuing violation doctrine, and because all of the remaining alleged discriminatory comments were made within the applicable statute of limitations period under Title VII, Hashem's claims against the Board, Defendants Steffner, Cooley and Lucas are not time-barred.

**C.      Administrative Exhaustion under Title VII and NJLAD as to Lucas**

Next, Lucas argues that Hashem failed to exhaust her administrative remedies because she failed to name Lucas in her EEOC charges, as required under Title VII and NJLAD.  Lucas further argues that Hashem does not fall within the narrow exception to the exhaustion requirement articulated in Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh, Pa., 903 F.2d 243 (3d Cir. 1990) and Glus v. G.C. Murphy Co., 629 F.2d 248 (3d Cir. 1980), vacated on other grounds, 451 U.S. 935 (1981).  In opposition, Hashem contends that she named Lucas in both her EEOC charge, as well as her amended charge. Even if Lucas were not named, Hashem contends that the application of the Schafer/ Glus exception is appropriate, because "Lucas' role could be clearly ascertained since specific discriminatory conduct was attributed to her in the charge," and that Lucas has not suffered a prejudice because "it does not appear that the EEOC took any action before issuing the Right-to-Sue letter."  Pl.'s Br. at p. 17-18.  In addition, Hashem contends that NJLAD does not impose an exhaustion requirement before filing a claim in the courts.

If a plaintiff fails to exhaust administrative remedies under Title VII, a defendant may raise that defense on a Rule 12(b)(6) motion to dismiss.  Anjelino v. New York Times Co., 200 F.3d 73, 87-88 (3d Cir. 1999).  "Title VII provides strict guidelines for bringing an action against an employer for employment discrimination," McClaren v. N.J. State Dep't of Educ., No. 14-3213, 2015 U.S. Dist. LEXIS 8253, at *9 (D.N.J. Jan. 26, 2015), including the requirement that "[a] Title VII action ordinarily may be brought only against a party previously named in an EEOC action."  Schafer, 903 F.2d at 252; see Mandel v. M&Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013) ("To bring a claim under Title VII, a plaintiff must file a charge of discrimination with the EEOC and procure a notice of the right to sue.").  This requirement "serves to ensure that implicated parties are alerted of the allegations against them," as well as "encourage[ing] an informal conciliation process in lieu of trial."  Graddy v. Children's Home of Easton, No. 13-4432, 2016 U.S. Dist. 2127, at *15-16 (E.D. Pa. Jan. 7, 2016).

The Third Circuit, however, "recognizes an exception [to that requirement] when the unnamed party received notice and when there is a shared commonality of interest with the named party."  Schafer, 903 F.2d at 252.  In Glus, the Third Circuit "enumerated four factors that should be considered in determining whether the district court" possesses jurisdiction over a plaintiff's Title VII claims:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named (party) are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Glus, 629 F.2d at 251.  The court cautioned, however, that "[t]his four-prong test is not a mechanical one; no single factor is decisive. Instead each factor should be evaluated in light of the statutory purposes of Title VII and the interests of both parties."   Id. Importantly, "[t]he Third Circuit has found that Title VII must be construed liberally to prevent its jurisdictional requirements from thwarting the statute's substantive policies." Ford-Greene v. NHS, Inc., 106 F. Supp. 3d 590, 606 (E.D. Pa. 2015) (internal quotation marks and citation omitted).

In the instant matter, after examining Hashem's EEOC charge and the amended charge, it is clear that Lucas is not named in the caption, nor is she listed as a "Respondent."[11]  Nevertheless, Hashem asserts allegations against Lucas in the body of the amended EEOC charges numerous times. See Acampora v. Boise Cascade Corp., 635 F. Supp. 66, 71 (D.N.J. 1986) (concluding that "reference to a party in the body of an EEOC charge is sufficient to confer jurisdiction over the claim in the district court."); Johnson v. Atlantic City, No. 07-4212, 2010 U.S. Dist. LEXIS 19317, at *16-17 (D.N.J. Mar. 3, 2010) (stating that "a number of courts have determined that reference to defendants in the body of the EEOC charge is sufficient to satisfy the exhaustion requirement as to those defendants.").  For example, in her amended EEOC charge, Hashem states that Lucas informed Hashem that she "was going to be let go and that she was very sorry about it," since "her hands were tied (referring to Principal Cooley and Superintendent Steffner decision to discontinue Ms. Hashem's contract at Hunterdon Central)."  Pl.'s Ex. 3, at p. 8. Two days later, Hashem claims that Lucas gave her "low evaluation reviews causing Ms.

---

[11] Hashem only names the following Defendants as "Respondents" in her amended EEOC charge: the Board, Steffner, Cooley and Zywicki.

Hashem to receive a teacher practice score of 2.9 as pretext to cover up the unlawful dismissal."  Id.  Based on the low evaluation reviews, Lucas confirmed that "Hunterdon Central could not offer Ms. Hashem a contract for the next year."  Id.

Furthermore, analyzing the Glus factors, Lucas should have been placed on notice of her potential liability because she was referenced several times in the amended EEOC charge, including a specific reference to Lucas assigning a low evaluation score to Hashem as a pretext to "cover up" Hashem's discriminatorily based dismissal.  In addition, it can hardly be said that Lucas was harmed by her absence in the EEOC proceeding, since her interests are nearly identical to the interests of the named parties.  See Glus, 629 F.2d at 251.  In her amended EEOC charge, Hashem alleges that she was subjected to discrimination based on her race, religion and national origin, and that Lucas was a participant in the discriminatory conduct directed at Hashem.  Indeed, Hashem painted a picture that all defendants, including Lucas, jointly discriminated against her in a concerted effort. In addition, as further evidence of a shared commonality of interest, Lucas is represented in this case by the same attorney as the other defendants that were named in the amended EEOC charge.  See Glus, 629 F.2d at 251 (reasoning that the named and unnamed parties shared similar interest because they "were represented by the same attorney… in the district court proceeding").  Based on these factors, I find that I have jurisdiction over Hashem's Title VII claims against Lucas, and as such, Lucas' motion to dismiss on this basis is denied.

Finally, Hashem correctly asserts that NJLAD does not require Hashem to exhaust her administrative remedies prior to seeking relief in the courts. See Hernandez v. Region Nine Hous. Corp., 146 N.J. 645, 652 (1996) (stating that there are "marked differences"

between NJLAD and Title VII, since NJLAD "provides a complainant with a choice of remedies in seeking redress for alleged discrimination. Persons may pursue their claims either administratively, by filing a verified complaint with the DCR, or judicially, by directly instituting suit in the Superior Court."); see also N.J.S.A. § 10:5-13 (a plaintiff may "initiate suit in Superior Court under this act without first filing a complaint with the division or any municipal office."). Accordingly, Defendants' motion to dismiss Hashem's NJLAD claims against Lucas is denied.

**D.    First and Fourteenth Amendment Claims**

Defendants move to dismiss Hashem's First and Fourteenth Amendment claims, contending that she cannot bring a direct cause of action under the Constitution. In opposition, Hashem argues that she has properly pled her constitutional claims under 42 U.S.C. § 1983, reasoning that she "does not have to refer to § 1983 every time she asserts her Constitutional rights." Pl.'s Br. at p. 22.

It is well-established that Section 1983 provides the appropriate cause of action for all "citizens injured by an abridgement of those rights" guaranteed by the First and the Fourteenth Amendments. See Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 611 (2008) (internal quotations marks and citation omitted); see Rich v. New Jersey, No. 14-2075, 2015 U.S. Dist. LEXIS 61683, at *14-15 (D.N.J. May 12, 2015). Stated differently, a party may not assert claims for relief under the United States Constitution directly, but rather, he or she must use the remedies afforded under Section 1983. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-907 (3d Cir. 1997) ("By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law."); see also McGowan v. New Jersey, No. 08-5841, 2009 U.S.

Dist. LEXIS 50463, at *21 (D.N.J. June 16, 2009) ("A claim that a party's Constitutional rights have been violated, however, must be pled under the statutory mechanism for such claims, 42 U.S.C. § 1983.").

In her Amended Complaint, Hashem does not expressly state the statutory mechanism, 42 U.S.C. § 1983, which provides a remedy for the alleged violations of her First and Fourteenth Amendment rights. See Morse, 132 F.3d at 906-907.  Because it is clear that she has directly asserted her claims under the Constitution, Counts Six, Seven and Eight are dismissed without prejudice.[12]  Hashem may replead these claims under Section 1983.

## E.   Failure to Comply with NJTCA's Notice of Claim Requirement

In regard to Hashem's defamation claim,[13] Defendants argue that Hashem failed to comply with the notice requirement of the NJTCA, N.J.S.A. § 59:1-1, et seq., and as such, Count Ten (inappropriately captioned as a second Count Nine) should be dismissed as to all Defendants.[14]  Acknowledging that she did not serve any of the Defendants with a tort claim notice, Hashem contends that she has complied with the NJTCA's notice requirement by timely filing her notice with the New Jersey Department of the Treasury, Bureau of Risk

---

[12] Because those defects are readily curable, I also address whether Hashem alleges sufficient facts to maintain those claims, infra, at pg. 36-49.

[13] In New Jersey, an action for defamation requires the plaintiff to establish: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting to at least negligence by the publisher."  DeAngelis v. Hill, 180 N.J. 1, 12-13 (2004).  Because defamation is a tort claim, a plaintiff must comply with the notice requirements under the NJTCA.  See Brown v. City of Essex County New Jersey, No. 10-3980, 2010 U.S. Dist. LEXIS 130354, at *8-9 (D.N.J. Dec. 9, 2010).

[14] Defendants do not argue that Hashem fails to state a claim for defamation. Instead, their argument is based solely upon the failure to file a timely tort claims notice.

Management. Hashem further contends that Defendants were put on notice of the defamation claim when she filed her amended charge with the EEOC on August 28, 2015.

Under the NJTCA, "an individual may not sue a [New Jersey] public entity or public employee unless he [or she] provides the entity or employee with a pre-suit notice of claim" within ninety days of the accrual of a claim.  Martin v. Unknown U.S. Marshals, 965 F. Supp. 2d 502, 549 (D.N.J. 2013); see N.J.S.A. 59:8-8. If an individual fails to comply with that procedural requirement, he or she shall be forever barred from recovery against a New Jersey public entity or employee.  See Martin, 965 F. Supp. 2d. at 549 ("The failure to comply with the Act's notice of claim provisions is an absolute bar to recovery."); N.J.S.A. 59:8-8 (stating that if an individual fails to serve his or her notice of claim within ninety days, that individual "shall be forever barred from recovering against a public entity or public employee"); see also Karczewski v. Nowicki, 188 N.J. Super. 355, 357 (App. Div. 1982).

Importantly, the New Jersey Supreme Court has held that an individual must provide notice directly to the named public entity and employee.  See McDade v. Siazon, 208 N.J. 463, 476 (2011) ("Given the interplay between the notice procedure and the responsible public entity's opportunity to plan for potential liability and correct the underlying condition, the Legislature required that the notice of claim be filed directly with the specific local entity at issue."); Epstein v. State, 311 N.J. Super. 350, 356 (App. Div. 1998) ("The Attorney General may receive a notice of claim against the State, but notice to the Attorney General is not tantamount to actual or constructive notice to a local public entity."); see also Kamienski v. Attorney Gen. New Jersey, No. 11-3056, 2012 U.S. Dist. LEXIS 130044, at *22-24 (D.N.J. Sept. 12, 2012) (holding that plaintiff's service of the

notice of claim on the New Jersey Department of the Treasury is insufficient, reasoning that "serving a notice of claim to a public entity does not constitute actual or constructive notice on a different public entity under the TCA.").

Here, it is immaterial whether Hashem's amended EEOC charges contained allegations that Defendants defamed her by allegedly providing the FBI with false statements.  Rather, when asserting a defamation claim against a New Jersey public entity or public employee, such as Defendants in this case, a plaintiff must comply with the procedural requirements of the NJTCA or risk an absolute bar from recovery against those entities.  See Martin, 965 F. Supp. 2d. at 549.  Even assuming that the New Jersey Department of the Treasury, Bureau of Risk Management received her timely notice of claim, Hashem failed to directly serve Defendants within the ninety-day period from the accrual of the cause of action, as required by N.J.S.A. 59:8-8, nor did she seek leave to file a late notice of claim for "extraordinary circumstances" within one-year of the accrual of the claim, pursuant to N.J.S.A. 59:8-8 and 59:8-9.  Because Hashem has not satisfied the notice of claim requirement under the NJTCA, Count Ten is dismissed.

### F.    Employment Discrimination (Count One) – Title VII[15]

Defendants argue that Hashem has failed to state a claim for employment discrimination under Title VII, reasoning that Hashem did not allege that Defendants engaged in any discriminatory conduct.  Even if Defendants did engage in discriminatory conduct, Defendants further argue that the Title VII claim still fails because Hashem was

---

[15] Defendants do not move to dismiss on the basis that Hashem fails to state a claim for employment discrimination under NJLAD. I note, however, Title VII and NJLAD apply the same standard for employment discrimination.  See Murphey v. Hous. Auth. and Urban Redev. Agency, 32 F. Supp. 2d 753, 763 (D.N.J. 1999).

not subject to an adverse employment action; she was merely directed by Defendants not to discuss certain topics, which Defendants are permitted to do.[16]  Simply put, Defendants maintain that "the job of a public school teacher is to teach the curriculum – not to teach personal beliefs or perspective, or to proselytize or indoctrinate."  Defs.' Br. at p. 26.  To counter, Hashem insists that Defendants discriminated against her by preventing her from teaching the same topics as her Caucasian colleagues at the High School on the basis of her race, religion and national origin, and that she was constantly harassed by the Individual Defendants as well as the Board. Finally, Hashem maintains that she suffered an adverse employment action when her employment contract was not renewed.

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin.  See 42 U.S.C. § 2000e-2.  In order to state a claim, a plaintiff must allege: (1) that she is a member of a protected class; (2) that she is qualified for the position; (3) that she was fired from that position or treated adversely in that position; and (4) that the circumstances of the case give rise to an inference of unlawful discrimination such as might occur when other similarly situated persons are not treated adversely.[17]  See Jones v. School Dist. of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999); Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995).

---

[16] To the extent that Defendants argue that they are permitted to restrict Hashem's speech as a teacher, the Court will address that issue in connection with Hashem's First Amendment claims, infra, at pg. 38-42.

[17] On a motion for summary judgment, if a plaintiff establishes a *prima facie* case of employment discrimination under Title VII, the defendant is entitled to assert a legitimate business reason for the plaintiff's termination as part of the burden shifting paradigm under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). However, such an analysis is not appropriate on a motion to dismiss.

In her Amended Complaint, Hashem alleges that she is a member of several protected classes: she is an Arab; she is a Muslim; and she is of Palestinian descent. Am. Compl. at ¶ 15. Hashem alleges that she was qualified for her position because, although she was initially hired as a student teacher, she was subsequently offered a full-time position as a U.S. History teacher based on her performance. Id. at ¶ 17. Indeed, while Hashem acknowledges that she received a "poor evaluation" from Lucas in 2015, she attributes that evaluation as forming the pretextual basis for the alleged discriminatory decision not to renew her contract.

Hashem alleges that Defendants' decision not to renew her contract for the 2015-2016 school year was based on discriminatory motives, which constitutes an adverse employment action. See Greer v. Mondelez Global, Inc., 590 Fed. App'x 170, 173 (3d Cir. 2014) (broadly stating that "[a]n adverse employment action can generally be demonstrated by a hiring, firing, failure to promote, reassignment with significant different responsibilities, or a decision causing a significant change in benefits."); see also LeBlanc v. Hill Sch., No. 14-1674, 2015 U.S. Dist. LEXIS 2981, at *22 (E.D. Pa. Jan. 12, 2015) ("We conclude that the non-renewal of Plaintiff's employment contract for the 2014-2015 academic year constitutes an adverse employment action."). Indeed, just like an employer who cannot fire an at-will employee for discriminatory reasons, Defendants, here, cannot elect not to renew Hashem's employment contract solely based on her race, religion or national origin. Therefore, Hashem has sufficiently alleged an adverse employment action.

Finally, Hashem has alleged sufficient facts to give rise to an inference of unlawful discrimination. See Angrand v. Paragon Village, No. 09-1118, 2010 U.S. Dist. LEXIS 39669, at *11-12 (D.N.J. Apr. 22, 2010) (holding that the plaintiff, an African-American

man from Haiti, had established an inference of discrimination when he was terminated from his position at a nursing home, but his two "white and/or Hispanic" colleagues were not reprimanded, even though they were also "hang[ing] out" in a patient's room with the plaintiff). Here, Hashem has alleged that she and Ms. Warren were both teachers at in the Social Studies Department at the High School, and that they both showed the Video to their students. Despite the similar circumstances, when a parent complained, Steffner allegedly reprimanded Hashem for showing the Video to her students, specifically commenting that Hashem had "caused trouble because she was Palestinian." Am. Compl. at ¶ 28. When Hashem stated that Ms. Warren had shown the same video, Steffner allegedly slammed her hand on the table and stated, "You are not Lindsay." Id. Similar to the facts in Angrand, Hashem asserts that Defendants prevented her from teaching the same topics as Ms. Warren, a similarly situated colleague, and that she was ultimately terminated based on her race, religion and national origin.[18] Accordingly, based on the totality of the allegations, Hashem has stated a claim for employment discrimination under Title VII.

### G.      Disparate Treatment (Count Two) – Title VII[19]

Defendants move to dismiss Hashem's claim for disparate treatment under Title VII, arguing that Hashem has failed to identify an individual who is similarly situated to

---

[18] While not expressly argued in this section, Defendants argue in other sections that Hashem has failed to identify another similarly situated person who was treated less favorably than Hashem. Although briefly addressed here, that issue will be discussed more fully in the context of Hashem's disparate treatment and equal protection claims.

[19] Defendants do not argue that Hashem failed to state a claim for disparate treatment under NJLAD. However, Title VII and NJLAD apply the same standard for disparate treatment. See Matos v. PNC Fin. Servs. Grp., No. 03-5320, 2005 U.S. Dist. LEXIS 24529, at *18 n.3 (D.N.J. Oct. 17, 2005).

Hashem, but was treated more favorably than she.  In response, Hashem contends that she was treated less favorably than Ms. Warren, who was similarly situated to Hashem.

Under Title VII, "[a] disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII." EEOC v. Metal Service Co., 892 F.2d 341, 347 (3d Cir. 1990).  Importantly, a plaintiff must allege that the employer acted with a discriminatory intent, which can either be shown through direct evidence or indirect or circumstantial evidence.[20] Id.  Stated differently, the plaintiff must allege facts and circumstances "to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." Id. at 348 (internal quotation marks and citation omitted); see Crawford v. Verizon Pa., Inc., 103 F. Supp. 3d 597, 606 (E.D. Pa. 2015).  However, the Third Circuit noted that "courts must be sensitive to the myriad of ways such an inference can be created." Metal Service Co., 892 F.2d at 347.

When accepting all allegations as true, Hashem has adequately alleged a claim for disparate treatment. As set forth above, Hashem alleges that she is a an Arab Muslim woman of Palestinian descent, and that she was singled out by Defendants based on her race, religion and national origin as discussed, supra, at pg. 25-26.[21]  Critically, Hashem

---

[20] Similar to a claim for employment discrimination under Title VII, on a motion for summary judgment, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action if the plaintiff indirectly shows discriminatory intent. Metal Services Co., 892 F.2d at 347; see McDonnell Douglas Corp., 411 U.S. at 792.  However, such burden shifting is not appropriate on a motion to dismiss.

[21] In addition, the question of whether Hashem and Ms. Warren are similarly situated is discussed more fully in regard to Hashem's Fourteenth Amendment Equal Protection claim, infra, at pg. 42-49, so I will not belabor the issue here.

has alleged that she is similarly situated to Ms. Warren, a Caucasian teacher at the High School who also showed the Video to her students, and that she was treated less favorably than Ms. Warren.  As such, Hashem has alleged sufficient facts and circumstances to create an inference of discrimination such that she was disparately treated by Defendants based on her race, religion and national origin.[22]

## H.  Disparate Impact (Count Three) – Title VII[23]

Defendants simply argue that Hashem cannot state a claim for disparate impact under Title VII because she has failed to identify a discriminatory employment practice that disadvantages individuals on account of their protected class, and even if she could, Hashem's allegations are purely conclusory.  On the other hand, Hashem argues that Defendants employed a policy that limited aspects of the curriculum that the teachers are permitted to teach based on a teacher's race, religion or national origin.[24]

---

[22] Relying on Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001), Defendants also argue that Hashem cannot state a claim for disparate treatment, since she has not alleged an adverse employment action because "there is no support that directing Plaintiff to teacher her class in a particular way constitutes an adverse employment action."  Defs.' Br. at 28. In Cardenas, however, the Third Circuit did not address a claim for disparate treatment, but rather, it addressed a claim for hostile work environment under Title VII and NJLAD, which is not applicable to this matter.  See Cardenas, 269 F.3d at 260-262. And, indeed, Hashem alleges that Defendants' refusal to renew her contract – not that Hashem was directed to teach in a certain manner – is an adverse employment action.

[23] Defendants do not argue that Hashem failed to state a claim for disparate impact under NJLAD.  Again, Title VII and NJLAD apply the same standard for disparate impact.  See Rodriguez v. AT&T, No. 89-1313, 1992 U.S. Dist. LEXIS 4681, at *31 (D.N.J. April 6, 1992).

[24] Relying on an affidavit attached to her moving papers, Hashem argues that Mr. Darrell DeTample, a teacher at the High School, stated that he had a conversation with Cooley in which she stated that she would not allow a gay teacher to teach about "gay-issues."  I have already struck this certification from consideration, as it is outside the Amended Complaint.

Under Title VII, a disparate impact violation arises when an employer is shown to have used a specific employment practice, neutral on its face, but causing a substantial adverse impact on a protected group and which cannot be justified as serving a legitimate business goal of the employer.  NAACP v. N. Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011); Metal Service Co., 892 F.2d at 346 (3d Cir. 1990); 42 U.S.C. § 2000e-2(k)(1)(A)(i).  "Title VII is meant to ensure that workplaces are free from discrimination and that employment decisions are made based on qualifications rather than extraneous factors such as race and color."  United States v. State of New Jersey, No. 10-91, 2012 U.S. Dist. LEXIS 113175, at *25-26 (D.N.J. June 12, 2012). "Unlike the disparate treatment theory of liability, a claim of disparate impact does not require proof of discriminatory motive." Crawford, 103 F. Supp. 3d at 606.

In order to state a claim for disparate impact, a plaintiff is required to identify the specific policy at issue.  Newark Branch, NAACP v. Twp. of Harrison, 940 F.2d 792, 798 (3d Cir. 1991); see N. Hudson Reg'l Fire & Rescue, 665 F.3d at 476; Williams v. Compassionate Care Hospice, No. 16-2095, 2016 U.S. Dist. LEXIS 101669, at *11 (D.N.J. Aug. 3, 2016).  Thus, a plaintiff fails to state a disparate impact claim if he or she alleges "discrete incidents" that resulted in discrimination as opposed to "specific polices."  See Graves v. Ancora Psychiatric Hosp., No. 10-369, 2012 U.S. Dist. LEXIS 175128, at *13 (D.N.J. Dec. 10, 2012) (concluding that, although the plaintiff referenced "discrete incidents, she mention[ed] no specific policies that resulted in discrimination against members of a protected class. The failure to do so is fatal to her disparate impact claim.").

In Graves, an African-American female nurse filed suit against her former employer asserting a claim for disparate impact under Title VII, alleging four separate

instances in which she was treated differently than her white colleagues: (1) she was denied the opportunities or rights given to white employees in regard to multiple probationary periods; (2) she was not able to take the civil service examination; (3) her employer forced her to withdraw monies from her pension savings, and (4) her employer refused to train the her. Id. at *12-13. The court explained that, although the plaintiff used the words "disparate impact" to describe the employer's actions, she failed to allege that the employer "implemented or enforced a policy that resulted in a disparate impact on a protected class" because she only alleged discrete incidents directed at the plaintiff. Id. at *13. In comparison, another court in the Williams case held that the plaintiff, an African-American female nurse, had "specifically pointed to the policy at issue and alleged that it results in a disparate impact," but the court noted "that discovery is needed to ultimately determine the merits of Plaintiff's claim." Williams, No. 16-2095, 2015 U.S. Dist. LEXIS 101669, at *14. The court found that the disparate impact claim was sufficiently alleged because the plaintiff had specifically pointed to a policy - that her employer checked applicants' criminal background prior to making a hiring decision - which resulted in a disproportionate impact on African-Americans. Id. at *11-12.

In this matter, Hashem's claim for disparate impact is more closely analogous to the plaintiff's claims in Graves. Unlike the plaintiff in Williams, Hashem has not identified a discriminatory employment policy that is neutral on its face. Instead, she has identified alleged discrete incidents in which Defendants imposed restrictions only upon Hashem. For example, Hashem alleges that she was instructed not to "teach current events in the same manner as her non-Arab, non-Palestinian and non-Muslim colleagues." Am. Compl. at ¶ 20. On a separate occasion, Hashem was allegedly told "not [to] mention Islam or the

Middle East in her class, and that she "should not bring her culture, life experience or background into the classroom." Id. at ¶ 24.  Hashem does not allege that Defendants imposes similar restrictions upon other teachers at the High School, and even if they did, such a restriction would not be neutral on its face.  See N. Hudson Reg'l Fire & Rescue, 665 F.3d at 476.  Because Hashem has failed to allege one of the core requirements of a disparate impact claim under Title VII - a neutral employment policy that results in disproportional discriminatory effect on members of a protection class - Count Three is dismissed without prejudice.

## I.      Retaliation (Count Four) – Title VII and NJLAD

Defendants contend, even under the most liberal construction of the Amended Complaint, Hashem fails to allege that she opposed an employment policy or engaged in a protected activity under Title VII or NJLAD because Hashem only asserts general complaints of unfair treatment.  In addition, Defendants argue that Hashem has not experienced an adverse employment action, and even if she did, she cannot establish a causal connection.  In opposition, Hashem argues that she specifically complained to Steffner about Ms. Warren, and based on that verbal complaint, Defendants made a discriminatory decision not to renew Hashem's employment contract. When viewed together with other allegations, Hashem avers that Defendants' decision in this regard was the culmination of on-going and persistent discrimination.

To state a claim of retaliation under Title VII and NJLAD, a plaintiff must show that: "(1) she engaged in a protected activity under Title VII [and NJLAD]; (2) the employer took an adverse action against her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action."

Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 320 (3d Cir. 2008); see

Hoist v. New Jersey, No. 12-5370, 2015 U.S. Dist. LEXIS 106527, at *57 (D.N.J. Aug. 13,

2015); see also Hargrave v. Cnty. of Atlantic, 262 F. Supp. 2d 393, 423 (D.N.J. 2003)

(stating that Title VII and NJLAD apply the same standard for retaliation).  Importantly,

the first element of Title VII only protects "those who oppose discrimination made

unlawful by Title VII."  Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006).

"[O]nly complaints about discrimination prohibited by Title VII - that is, discrimination on

the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2 constitute

'protected activity.'"  Davis v. City of Newark, 417 Fed. App'x. 201, 203 (3d Cir. 2011);

see Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir.

2006).

　　　　Here, Hashem has sufficiently alleged that she engaged in protected activity by

complaining to Steffner that she was being treated differently than her Caucasian colleague,

which is a protected activity. See Curay-Cramer, 450 F.3d at 135 (a complaint may be

formal or informal, such as making complaints to management).  More specifically, in

October 2013, Cooley allegedly advised Zywicki that a parent had complained about

Hashem showing her students the Video. Am. Compl. at ¶ 20.  Based on that complaint,

Zywicki told Hashem that "she could not teach current events in the same manner as her

non-Arab, non-Palestinian and non-Muslim colleagues."  Id.  However, there are no

allegations that Ms. Warren was counseled for showing the Video.  In that connection, in

September 2014, Steffner told Hashem "that she caused trouble because she was

Palestinian since the day she started working at the high school, making reference to the

Malala Yusufzai video." Id. at ¶ 28.  In an attempt to defend her actions, Hashem explained

to Steffner that Ms. Warren "used the same video and it was not a problem then."  Id.  In response, Steffner allegedly slammed her hand on the desk and yelled, "You are not Lindsay." Id.

In addition, Hashem has sufficiently alleged an adverse employment action, since she alleges that Defendants decided not to renew her employment contract based on discriminatory reasons. See Greer, 590 Fed. App'x at 173; see also LeBlanc, No. 14-1674, 2015 U.S. Dist. LEXIS 2981, at *22. Finally, Hashem has sufficiently alleged that Defendants demonstrated acts of antagonism or acts reflecting animus. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 286 (3d Cir. 2000) (stating that "the causal chain" may be established by "acts of antagonism or acts actually reflecting animus").  In this matter, Hashem has alleged a litany of acts that bespeak antagonism towards her, as well as actual animus.  For example, Hashem alleges that Defendants, on multiple occasions, told her to stop teaching current events in the same manner as her other colleagues and from mentioning Islam or the Middle East in her classroom.  See Am. Compl. at ¶¶ 20, 24. Furthermore, after a student allegedly posted a discriminatory comment on Facebook,[25] Cooley summoned Hashem to her office, and then proceeded to accuse Hashem "of discriminating against Jewish students and questioned her about her place of birth, her family, as well as her personal life."  Id. at ¶¶ 26-27.  Steffner also allegedly told Hashem that she had "caused trouble because she was Palestinian."  Id. at ¶ 28.  These allegations, taken together, show a pattern of discriminatory animus toward Hashem sufficient to

---

[25] The student allegedly stated that Hashem's brother was a terrorist, and that she is "anti-Israel, was attempting to instill anti-Semitic views in students and warned that Plaintiff may hurt students who did not agree with her."  Am. Compl. at ¶ 25.

establish a causal connection between Hashem's protected activity and the adverse employment action.  Accordingly, Hashem has alleged a claim for retaliation under Title VII and NJLAD.

**J.     Conspiracy to Discriminate (Count Five) – NJLAD**

Defendants argue that Hashem has failed to allege a claim for conspiracy to discriminate, pursuant to N.J.S.A. § 10:5-12, because Hashem has not alleged an agreement between Defendants, nor has she identified how Defendants undertook a concerted effort to discriminate.  In response, Hashem argues that she has sufficiently alleged an agreement between Defendants, motivated by discriminatory animus. For example, Hashem points to Lucas' comment that Defendants Steffner and Cooley "wanted her gone."  Am. Compl. at ¶ 31.  In addition, Hashem argues that she has sufficiently alleged that Defendants made a concerted effort to harass her, as well as intimidate and dismiss her because she is a Muslim woman of Palestinian descent.

Before I reach the merits, in the Amended Complaint, Hashem alleges that Defendants conspired to discriminate against her in violation of N.J.S.A 10:5-15 of NJLAD, see Am. Compl. at ¶ 53, which is clearly inapplicable to the facts and circumstances in this matter, since that provision governs notice requirements.[26]  Instead,

---

[26] N.J.S.A 10:5-15 states:

> In case of failure so to eliminate such practice or discrimination, or in advance thereof if in his judgment circumstances so warrant, the Attorney General shall cause to be issued and served in the name of the division, a written notice, together with a copy of such complaint, as the same may have been amended, requiring the person, employer, labor organization, employment agency, owner, lessee, proprietor, manager, superintendent, or agent named in such complaint, hereinafter referred to as respondent, to answer the charges of such complaint at a hearing before the director at a time and place to be specified in such notice. The place of any such hearing

it appears that Hashem is relying on N.J.S.A. 10:5-12, which "identifies several actions taken by an employer against an employee or prospective employee as unlawful employment practices."[27] Smith v. Millville Rescue Squad, 225 N.J. 373, 387-388 (2016).

Specifically, it appears that Hashem attempts to assert a claim for conspiracy to discriminate under N.J.S.A. 10:5-12e, since she alleges that the Individual Defendants engaged in a concerted effort to discriminate against her. See N.J.S.A. 10:5-12e (stating that it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act," such as discriminating based on race, religion or national origin); see also Cicchetti v. Morris County Sherriff's Office, 194 N.J. 563, 594 (2008) (concluding that "individual liability of a supervisor for acts of discrimination... can only arise through the 'aiding and abetting' mechanism" of NJLAD).

Fatal to Hashem's claim, however, is that the statute does not provide a separate and distinct cause of action for conspiracy to discriminate.  See Shepherd v. Hunterdon Developmental Ctr., 336 N.J. Super. 395, 428 (App. Div. 2001), rev'd on other grounds, 174 N.J. 1, (N.J. 2002).  In Shepherd, the New Jersey Appellate Division held that the trial court properly dismissed the plaintiffs' claims for conspiracy under NJLAD, reasoning that "[e]vidence of any conspiracy would... not establish a separate claim under the [NJLAD], but would be a part of plaintiffs' proofs that [the defendants that directly supervised the

---

shall be the office of the Attorney General or such other place as may be designated by him.

[27] Hashem's Amended Complaint cannot fairly be read to include a claim for common law conspiracy or civil rights conspiracy violations under 42 U.S.C. §§ 1983 and 1985.

plaintiff] should be individually responsible" as an accomplice under N.J.S.A. 10:5-12e.
Id.

Here, Hashem alleges that Defendants "conspired to discriminate against plaintiff by hampering her ability to learn from and use the experience of her colleagues, creating a false evaluation, preventing plaintiff from making a full presentation before the Defendant Board of Education and wrongfully terminating plaintiffs [sic] employment to appease their own and a minority of the local community's discriminatory animus toward" Hashem in violation of NJLAD.[28]  Am. Compl. at ¶ 53.  But, NJLAD does not recognize conspiracy claims, and this claim is not based on aiding or abetting allegations.[29]  See Shepherd, 336 N.J. Super. at 428.  Accordingly, Count Five is dismissed.

### K.  Violations of the First Amendment (Count Six)

Defendants argue that, other than conclusory allegations, Hashem fails to allege any facts or circumstances to support her claim that Defendants violated her First Amendment rights.  In response, Hashem contends that Defendants misconstrue her claim. In essence, Hashem maintains that her First Amendment right to free exercise of religion has been violated by Defendants because she "was treated differently from her similarly

---

[28] While both parties cite Capogrosso v. Supreme Court of New Jersey, 588 F.3d 180 (3d Cir. 2009) and Faber v. City of Paterson, 440 F.3d 131 (3d Cir. 2006), as establishing the standard for conspiracy to discriminate under NJLAD, those decisions are plainly distinguishable.  First, in Capogrosso, the Third Circuit did not address conspiracy to discriminate under NJLAD.  See Capogrosso, 588 F.3d at 184-185.  Rather, the court held that the plaintiff failed to state a claim for "judicial conspiracy" under 42 U.S.C. § 1983. Id.  Second, in Faber, the Third Circuit similarly did not address conspiracy to discriminate under NJLAD.  Instead, the court addressed civil rights conspiracy under 42 U.S.C. § 1985. Faber, 440 F.3d at 134-135.

[29] Furthermore, since no aiding and abetting claim was plead, I am not making any finding whether an aiding and abetting claim would be viable.

situated non-Muslim colleague in violation of her religious freedoms." Pl.'s Br. at p. 23. Moreover, Hashem contends that Defendants "told [her that] she could not teach the same topics as her non-Arab, non-Palestinian and non-Muslim colleagues," as well as being targeted for being "a troublemaker." Id.

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…." U.S. Const. Amend. 1; see Zelman v. Simmons-Harris, 536 U.S. 639, 648-649 (2002) (stating that the First Amendment applies to the states and its political subdivisions through the Fourteenth Amendment). In particular, "[t]he First Amendment prohibits the government from burdening the free exercise of religion." Anspach v. City of Philadelphia, 503 F.3d 256, 272 (3d Cir. 2007); see King v. Christie, 981 F. Supp. 2d 296, 331 (D.N.J. 2013) (stating that "the Free Exercise Clause protects religious expression; however, it does not afford absolute protection."). "However, the First Amendment is only implicated if the governmental burden on religion is substantial." Anspach, 503 F.3d at 272 (internal quotation marks and citation omitted). In order to establish a substantial burden, a plaintiff must "allege state action that is either compulsory or coercive in nature," which inhibits the practice of his or her religion. Id.

In Count Six, Hashem – in one sentence – alleges that Defendants violated her constitutional rights under the First Amendment and the New Jersey Constitution because Defendants "individually and collectively acted with wanton and reckless disregard for plaintiff's civil rights." Am. Compl. at ¶¶ 55-57. No other allegations are asserted in support of this claim that Defendants inhibited the practice of her religion. Instead, Hashem explains in her opposition brief that Defendants are punishing her for her religious

background.[30]   However, while those allegations may form the basis of a Title VII and

NJLAD retaliation claim on the grounds of religion, they do not support a First Amendment

free exercise of religion claim.  Indeed, Hashem has not alleged any facts to plead such a

claim. As such, Hashem fails to state the threadbare recitals of the elements of a cause of

action under the First Amendment.  See Iqbal, 556 U.S. 678.  Without such recitals of the

elements, supported by adequate allegations, Defendants do not have "fair notice of what

the… claim is and the grounds upon which it rests."   Twombly, 550 U.S. at 555.

Accordingly, Count Six is dismissed without prejudice.

**L.   First Amendment Retaliation (Count Seven)**

In regard to Count Seven, Defendants maintain that Hashem also fails to allege any

facts or circumstances that Defendants violated her First Amendment right to free speech

because Hashem's speech was made in her capacity as a public school teacher, and as such,

Defendants have the right to place reasonable restrictions on the speech of their teachers.

In response, acknowledging that a governmental employer has the ability to place some

---

[30] But, Hashem does not provide clarity in her opposition brief.  Relying on Hassan v. City of New York, 804 F.3d 277, 289 (3d Cir. 2015), Hashem insists that she is only required to allege "an identifiable trifle of harm" to state a claim for free exercise of religion under the First Amendment.  However, Hashem misinterprets Hassan.  In that case, the Third Circuit merely stated that a plaintiff need only allege "an identifiable trifle of harm" to establish an injury-in-fact, a requirement for standing to sue in a federal forum. Id.  Next, Hashem cites Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) for the proposition that the elements of her First Amendment claim parallel her Title VII claims. Hashem reasons that if she can state a claim under Title VII, she can correspondingly state a claim under the First Amendment.  In Feingold, the Second Circuit noted that "[o]nce action under color of state law is established, [the plaintiff's] equal protection claim parallels his Title VII claim."  Id.  The court reasoned, "The elements of one are generally the same as the elements of the other and the two stand or fall together."  Id.  However, the Second Circuit was silent on whether the plaintiff's First Amendment claim parallels his Title VII claims.  See id. at 160.  As such, Feingold is not instructive in this matter.

restrictions on its employees, Hashem nevertheless argues that she has adequately alleged that Defendants retaliated against her for speaking out on matters of public concern.

In order to state a claim for retaliation under the First Amendment, a public employee plaintiff must allege that: (1) she engaged in a protected activity; (2) that the government employer responded with retaliation; and (3) the protected activity caused the retaliation.  See Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004); see also Berkery v. Wissahickon Sch. Dist. Bd. of Directors, 628 Fed. App'x 109, 112 (3d Cir. 2015) (stating that a public employee plaintiff "must allege that her speech was both protected by the First Amendment and was a substantial or motivating factor in her employer's adverse action.").  "While the government's role as employer... gives it a freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large, this hand cannot act with impunity."  Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001) (internal quotation marks and citation omitted).  Stated differently, "[p]ublic employers cannot silence their employees simply because they disapprove of the content of their speech."  Id.

To qualify as protected speech, a public employee must allege that his or her speech involves a matter of public concern, see Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003), which is speech that "can be fairly considered as relating to any matter of political, social or other concerns to the community."  Baldassare, 250 F.3d at 195 (internal quotation marks and citation omitted); see Connick v. Myers, 461 U.S. 138, 148 (1983); see also Muzslay v. City of Ocean City, 238 Fed. App'x 785, 789 (3d Cir. 2007).  "Accordingly, 'speech may involve a matter of public concern if it attempts to bring light to actual or

potential wrongdoing or breach of public trust on the part of government officials.'" Brennan, 350 F.3d at 412 (quoting Connick, 461 U.S. at 148).

Importantly, however, matters of personal interest do not constitute protected speech. Id. ("If the speech in question is purely personal, it does not fall under the protective umbrella of the First Amendment"); Feldman v. Philadelphia Hous. Auth., 43 F.3d 823, 829 (3d Cir. 1994) (stating that the court must first determine "if the speech related to matters of public concern, or constituted merely personal grievances"). "Speech by a public employee 'as a citizen upon matters of public concern' is distinguishable from speech by 'an employee upon matters of only personal interest' for which, 'absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.'" Watter v. City of Philadelphia, 55 F.3d 886, 892 (3d Cir. 1995) (quoting Connick, 461 U.S. at 147).

Thus, even if the speech by a public employee touches on a topic of general importance, such as discrimination or harassment, that speech is a not matter of public concern if the employee complains "only about isolated acts directed solely at them." Rowan v. City of Bayonne, 474 Fed. App'x 875, 878 (3d Cir. 2012) (reasoning that a public employee's speech must "seek to expose discriminatory or harassing practices by the [employer]" in order to be a matter of public concern); see Sanguigni v. Pittsburgh Bd. of Pub. Educ., 968 F.2d 393, 399 (3d Cir. 1992) (stating that an employee's complaints are not a matter of public concern if "the complaints were not made to protect the interests of other employees but only to protect the interests of the complaining employee himself."). Similarly, courts in the Second Circuit have found that a public employee's complaints of

discrimination and harassment are not a matter of public concern if those complaints are personal in nature and generally relate to his or her own employment situation. See, e.g., Kuder v. City of Rochester, 992 F. Supp. 2d 204, 209 (W.D.N.Y. 2014) (stating that "speech that, although touching on a topic of general importance, primarily concerns an issue that is personal in nature and specific to the employee's own situation, does not address a matter of public concern."); Brown v. N.Y. State Dep't of Corrs. Servs. 583 F. Supp. 2d 404, 412-413 (W.D.N.Y. 2008) (stating that "a public employee's complaints to his [or her] supervisors about discrimination or harassment typically do not meet the 'public concern' standard.").

In Otero v. Port Auth. of N.Y. and N.J., No. 14-1655, 2016 U.S. Dist. LEXIS 43332, at *34 (D.N.J. Mar. 31, 2016), a police officer alleged that he was retaliated against in violation of his First Amendment rights "for filing a series of complaints regarding an incident where [the plaintiff] refused to laugh at [his fellow officer's] racially charged joke." The district court held that "it is clear that [the plaintiff's] complaints were personal in nature and their content did not rise to the level of a matter of public concern," id. at *38, reasoning that "the complaints submitted by [the plaintiff] reference a single instance of discriminatory language directed at a single employee," and that his complaints, "overwhelmingly focus on his treatment at the hands of his superior officers," rather than any harm suffered by the target of the discriminatory remarks or any other employee at the police department. Id. at * 37 (citing Rowan, 474 Fed. App'x at 878).

Here, Defendants are not moving on the issue of causation or adverse employment action; rather, they argue that Hashem's speech was not protected. On that point, while Defendants contend that they are entitled to restrict a teacher's speech in the classroom,

Defendants misconstrue Hashem's claim for retaliation under the First Amendment. Hashem argues that she "engaged in protected activity related to matters of public concern when she questioned [Steffner on] the discriminatory disparity in the way the school treated [Hashem] as opposed to Lindsay Warren." Pl.'s Br. at p. 25. In her Amended Complaint, Hashem alleges that she complained to Steffner because she was being treated less favorably than Ms. Warren, who also showed the Video to her students, and that Steffner condoned Ms. Warren's actions. Am. Compl. at ¶ 28. Thus, Hashem's First Amendment claim is based on her comments to the administration voicing concerns regarding discrimination, not based on what Hashem taught in class, as Defendants have argued.

However, Hashem's complaint to Steffner is not a matter of public concern, but rather, her complaints were personal in nature. As alleged, Hashem complained to Steffner that she was treated less favorably than Ms. Warren because Hashem is an Arab Muslim woman of Palestinian descent. See Am. Compl. at ¶ 28. While discrimination is obviously a topic of general importance, Hashem was, however, complaining about "isolated acts," which were directed against Hashem at the hands of the Individual Defendants. See Rowan, 474 Fed. App'x at 878. Critically, Hashem's complaint to Steffner was not made to protect the interests of other employees, see Sanguigni v, 968 F.2d at 399, since she was not attempting to "expose discriminatory or harassing practices" by Defendants for the good of the public. See Rowan, 474 Fed. App'x at 878. Accordingly, even when accepting her allegations as true, Hashem has failed to allege a First Amendment claim for retaliation because her speech is not protected, and as such, Count Seven is dismissed without prejudice.

**M.     Violations of the Fourteenth Amendment (Count Eight)**

**(i).**  **Equal Protection**

Defendants maintain that Hashem cannot establish a claim under the Fourteenth Amendment because she has failed to identify individuals outside of her protected classes who received differential treatment. While acknowledging that Hashem alleges that she was treated differently from Ms. Warren, Defendants contend that Hashem has not adequately pled facts to show that the two teachers were actually similarly situated.  For example, Defendants point out that Hashem does not allege that Ms. Warren received any parental complaints for showing the Video, nor does she allege whether Defendants had a conversation with Ms. Warren prohibiting (or, permitting)  her to teach "current events" in the same or similar manner to Hashem. Finally, Defendants contend that Hashem cannot state a claim against the Board because she does not allege that Defendants' discriminatory actions were the result of a custom, policy or practice.[31]

Contending that her claim under the Fourteenth Amendment parallels her claim under Title VII, Hashem maintains that she has sufficiently stated a claim because she has identified a similarly situated individual, Ms. Warren.  Hashem argues that she and Ms. Warren are similarly situated, since they are both Social Studies teachers at the High School, and they teach the same classes.  In addition, Hashem contends that she has alleged a policy or custom of limiting the topics a teacher can teach based upon his or her protected

---

[31] I note that Defendants do not move for dismissal on the basis that Hashem's New Jersey State constitutional claim fails to state a claim; therefore, I need not address that issue.

class, and that Defendants engaged in discriminatory acts based on the fact that she is a Muslim woman of Palestinian descent.[32]

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall… deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (internal quotations and citation omitted); see Artway v. Attorney Gen. of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996) (stating that the Equal Protection Clause of the Fourteenth Amendment exists to protect similarly situated individuals from disparate treatment under the law or by some other state action). In order to bring a successful claim for a denial of equal protection, a plaintiff must allege the existence of purposeful discrimination because he or she is a member of a protected class, and that he or she "received different treatment from that received by other individuals similarly situated." Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009) (internal quotation marks and citation omitted); see Kasper v. Cnty. Of Bucks, 514 Fed. App'x 210, 214 (3d Cir. 2013); see also Knox v. Union Twp. Bd. of Educ., No. 13-5874, 2015 U.S. Dist. LEXIS 21536, at *33-34 (D.N.J. Feb. 23, 2015).

Here, Hashem has alleged in her Amended Complaint that Defendants engaged in purposeful discrimination, as evidenced by the Individual Defendants' aforementioned

---

[32] Hashem also relies on an affidavit by attached to her moving papers attesting that Lucas stated Hashem was treated differently from other teachers because of pressure from the community. As I noted supra, that certification has been struck.

discriminatory comments.  See Gage v. Twp. of Warren, No. 09-519, 2009 U.S. Dist. LEXIS 48743, at *14 (D.N.J. June 10, 2009) ("Because an allegation of discrimination under the Equal Protection Clause requires that the defendant intended to discriminate against the complainant based on his [or her] membership in an identifiable class, i.e. sex, race, creed, it follows *a fortiori* that the defendant knew the complainant was a member of the identified class."). Accepting her allegations as true, it is clear that Defendants were aware of her identified protected classes, since the Individual Defendants specifically reference the fact that Hashem is an Arab Muslim woman of Palestinian descent.[33]

In addition, Hashem also adequately alleges that Defendants engaged in purposeful discrimination. For example, in connection with a parental complaint regarding Hashem's comparative analysis exercise, Cooley allegedly directed Hashem "not [to] mention Islam or the Middle East in her class" and stated that she "should not bring her culture, life experience or background into the classroom."  Am. Compl. at ¶ 24.  Furthermore, Hashem alleges that Defendants Cooley and Steffner allegedly "accused [Hashem] of discriminating against Jewish students and questioned her about her place of birth, her family, as well as her personal life," and, in addition, Steffner told Hashem that she had "caused trouble because she was Palestinian." Id. at ¶¶ 26-28.  When viewed as a whole, Hashem has alleged that the Individual Defendants purposefully and improperly made discriminatory comments to Hashem based on her race, religion and national origin.

Next, while Defendants contend that Hashem is required to allege additional requirements in the context of a similarly situated individual, such as whether or not Ms.

_____

[33] However, I note that Hashem does not appear to allege that she was discriminated against based on her protected status as a female. Her allegations focus upon the fact that Defendants discriminated against her based on her race, religion and national origin.

Warren received a parental complaint for showing the Video, courts only require that a plaintiff plead enough facts to support a reasonable inference that similarly situated individuals were treated differently.  See Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (stating that persons are similarly situated under the Equal Protection Clause when they are alike "in all relevant aspects."); see also Warren v. Fisher, No. 10-5343, 2013 U.S. Dist. LEXIS 178944, at *23 (D.N.J. Dec. 20, 2013) (stating that a plaintiff is not required to satisfy a "heightened pleading standard," but rather, a plaintiff need only "plead facts that support a reasonable inference that similarly situated [individuals] existed and received different treatment").  Here, both Hashem and Ms. Warren worked as teachers at in the Social Studies Department at the High School, and they both taught the same or similar classes. Likewise, both Hashem and Ms. Warren showed the Video to their students, but only Hashem was allegedly reprimanded.  Moreover, when Hashem attempted to inform Steffner that Ms. Warren had also shown the Video, Steffner allegedly slammed her hand on the desk and yelled, "You are not Lindsay." Am. Compl. at ¶ 28.  Accordingly, at this preliminary stage of the litigation, Hashem alleges sufficient facts to establish a reasonable inference that she was treated differently than a similarly situated individual, Ms. Warren.

### (ii).   Equal Protection – Municipal Liability Claim

While it is unclear, Hashem appears to assert a claim against the municipal Defendants in her Fourteenth Amendment Equal Protection claim in Count Eight, pursuant to Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), because she alleges that Defendants' actions "constitute a pattern, custom and practice" in violation of her constitutional rights.  Am. Compl. at ¶ 63.  Hashem confirms as much in her opposition brief.  See Pl.'s Br. at pg. 29-30.  I note, however, that Hashem does not allege a claim

against the municipal Defendants under <u>Monell</u> in any of her other Counts, and as such, my <u>Monell</u> analysis is limited to the Equal Protection context.

Because municipal liability cannot be based on the doctrine of respondeat superior, <u>see</u> <u>Monell</u>, 436 U.S. at 690, a plaintiff, in a § 1983 claim against a municipality, must allege that the constitutional deprivation resulted from an official custom or policy. <u>Id.</u> at 691-694. Hashem's <u>Monell</u> claim fails. First and foremost, Hashem has failed to allege the relevant municipal policymaker. Instead, she asserts that claim against all Defendants. Even if I were to presume that her <u>Monell</u> claim is against the Board, that claim still fails.

Under <u>Monell</u>, "a school board can be held responsible for a constitutional violation of a teacher only if the violation occurred as a result of a policy, custom or practice established or approved by the board." <u>George v. Ed. of Educ.</u>, 34 F. Supp. 3d 442, 458 (3d Cir. 2014) (internal quotation marks and citation omitted). In order for the Board to be held liable, Hashem must allege that it acted in one of the following ways: (1) it adopted an official policy that deprives citizens of their constitutional rights; (2) it tolerated or adopted an unofficial custom that results in the unlawful stripping of constitutional rights; or (3) it failed to train, supervise or discipline its employees so as to prevent them from unlawfully depriving citizens of their constitutional rights. <u>Grendysa v. Evesham Twp. Bd. of Educ.</u>, No. 02-1493, 2005 U.S. Dist. LEXIS 22748, at *42-43 (D.N.J. Sept. 27, 2005); <u>see</u> <u>White v. City of Trenton</u>, No. 06-5177, 2009 U.S. Dist. LEXIS 43688, at *12 (D.N.J. May 20, 2009).

Here, Hashem does not allege the existence of an official school policy. <u>See</u> <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1059 (3d Cir. 1991) (stating that an official policy is an affirmative act, such as a "statement, ordinance, regulation or decision

officially adopted and promulgated" by a municipal decisionmaker).  Nor does she allege that the Board failed to train, supervise or discipline the Individual Defendants and others at the High School.  See Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999) (stating that a plaintiff must allege that a municipal decisionmaker knows that the employees will confront a particular situation, which involves a difficult choice or a history of employee mishandling, and that the wrong choice by the employee will frequently lead to a deprivation of constitutional rights).  Instead, in her Amended Complaint, Hashem alleges in a conclusory fashion that Defendants' actions "constitute a pattern, custom and practice" in violation of her constitutional rights.  Am. Compl. at ¶ 63.

A custom is "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990); see Owens v. Chester County, No. 97-1344, 2000 U.S. Dist. LEXIS 710, at *28 (E.D. Pa. Jan. 28, 2000) ("Any policy, custom, or procedure must, by its very nature, be recurrent in nature and be part of an ongoing pattern of activity.").  In addition, a custom requires "knowledge and acquiescence" by the decisionmaker.  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996); see Patrick v. Great Valley Sch. Dist., 296 Fed. App'x 258, 263 (3d Cir. 2008) ("A pervasive custom can be established by way of evidence that the relevant policymaking authorities knew of and acquiesced to the challenged practice.").  Importantly, however, a plaintiff must actually "identify a custom or policy, and specify what exactly that custom or policy was," as well as "allege conduct by a municipal decisionmaker." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).

Here, in her Amended Complaint, Hashem merely alleges: "Defendants' actions are willful and deliberate and are done under the color of law. These acts constitute a pattern, custom and practice in violation of plaintiff [sic] constitutional rights under 42 U.S.C. § 1983." Am. Compl. at ¶ 63. Thus, Hashem has failed to identify a custom, as well as "specify what exactly that custom or policy was" that caused the constitutional violations. McTernan, 564 F.3d at 658. In addition, Hashem fails to even identify which one of the Defendants is the decisionmaker, which is fatal to her claim. See id. Without alleging more as to the nature of the custom, or relevant the policymaking authority that knew of and acquiesced to the challenged practice, the Court cannot infer what custom gave rise to her injury. Thus, I find that Hashem has not sufficiently pled a Monell claim for municipal liability; and, it is dismissed without prejudice.

**N.     Discriminatory Discharge (Count Nine) – Title VII**

Defendants argue that Hashem has not pleaded sufficient facts to establish discriminatory discharge under Title VII. I disagree. To state a claim for discriminatory discharge under Title VII, a plaintiff must allege: (1) that she is a member of a protected class; (2) that she is qualified for the position; (3) that she was fired from that position; and (4) that the circumstances of the case give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class. Jones, 198 F.3d at 411; Almodovar v. Freeman Decorating Co., No. 06-3707, 2009 U.S. Dist. LEXIS 20728, at *6 (D.N.J. Mar. 16, 2009) (stating that "courts apply a similar analysis to discrimination claims brought pursuant to Title VII."). Because I have already concluded that Hashem stated a claim for discrimination under Title VII, and because the analysis for a discrimination claim is similar to a claim for discriminatory discharge, I find that Hashem

has stated a claim for discriminatory discharge for the same reasons I articulated in regard to her discrimination claim under Title VII.

## V.      Motion to Amend

In conjunction with her opposition to Defendants' motion to dismiss, Hashem also filed a motion for leave to file a Second Amended Complaint, arguing that she should be permitted to include additional allegations pertaining to Defendants' discriminatory conduct. Defendants oppose the motion for leave to file a Second Amended Complaint on the basis that "any attempts to re-plead claims that cannot be cured, i.e. those that are legally and/or procedurally barred and subject to dismissal with prejudice" must be denied. Defs.' Reply Br. at 32.  In light of my rulings on Defendants motion, I will give Hashem leave to file a Second Amended Complaint consistent with my Opinion here. In that regard, Hashem is permitted to amend Count Three (disparate impact claim), Count Six (First Amendment Free Exercise claim), Count Seven (First Amendment Free Speech claim) and Count Eight (Monell claim).  Hashem shall file her Second Amended Complaint within twenty (20) days from the date of the Order accompanying this Opinion.  Accordingly, Hashem's cross-motion to amend the Second Amended Complaint in its current form is denied as moot.

## VI.     CONCLUSION

For the foregoing reasons, Defendants' motion is granted in part and denied in part as follows: (i) Hashem's claims against the Individual Defendants under Title VII are dismissed; (ii) all of Hashem's claims against Zywicki are dismissed as time-barred; (iii) Hashem's disparate impact claim under Title VII and NJLAD in Count Three is dismissed without prejudice; (iv) Hashem's NJLAD conspiracy to discriminate claim in Count Five

is dismissed; (v) Hashem's First Amendment claims in Counts Six and Seven and her Fourteenth Amendment Equal Protection claim in Count Eight are dismissed without prejudice; (vi) Hashem's defamation claim in Count Ten is dismissed as to all Defendants. Defendants' motion to dismiss is denied as to the following counts: (i) Count One against the Board under Title VII and NJLAD, as well as the Individual Defendants under NJLAD, for employment discrimination; (ii) Count Two against the Board under Title VII and NJLAD, as well as the Individual Defendants under NJLAD, for disparate treatment; (iii) Count Four against the Board under Title VII and NJLAD, as well as the Individual Defendants under NJLAD, for retaliation; (iv) Count Nine against the Board under Title VII and NJLAD, as well as the Individual Defendants under NJLAD, for discriminatory discharge.  Finally, Hashem is given leave to amend her Amended Complaint consistent with the dictates of this Opinion, and therefore, Hashem's cross-motion for leave to file her Second Amended Complaint is denied as moot.

DATE: September 29, 2016

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge